1
2
3
4

RITA CORTEZ
854 Violet Court
Carlsbad, CA (213) 216-7388

Plaintiff, In Pro Per



5

6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

8

9    RITA CORTEZ, an individual,

10              Plaintiff,

11

12   v.

13   XEROX CORPORATION, a
     Corporation, and DOES 1 through 10,
14   inclusive,

15              Defendants.

16

17

18

19

20

Case No. 8:20-cv-02057-JDE

**MOTION TO ENJOIN**
Plaintiff's Former Counsel from
Effectively Intervening in this Case as a
Party and
**MOTION TO REOPEN
DISCOVERY**
Pursuant to Federal Rule of Procedure
60(b)(6)

Date:  February 9, 2024

Judge: Hon. John D. Early
Dept.:  6A

21
22
23
24
25
26
27
28

      Plaintiff, Rita Cortez, hereby moves this Court for an order (1) enjoining

Plaintiff's former counsel, Okorie Okorocha from effectively intervening, directly or

through his attorney Twila White, in this case as a party and (2) setting aside the

settlement agreement and reopening discovery in this case under Federal Rule of

Procedure 60(b)(6).

       Mr. Okorocha's unethical behavior and his effective abandonment of Ms.

Cortez's case in the midst of litigation entitles her to relief under Rule 60(b)(6).

1

2                                    **ARGUMENT**

3      **I.  Ongoing communications about this case between counsel for Defendant**

4          **and former counsel for Plaintiff constitute inappropriate intervention**

5          **by Plaintiff's former counsel as a party in this action.**

6

7          "On a timely motion, the court may permit anyone to intervene who . . . has a

8    claim or defense that shares with the main action a common question of law or fact."

9    Fed. R. Civ. P. 24. Those who do not have "a claim or defense that shares with the

10   main action a common question of law or fact" may not intervene *See Kauffman v.*

11   *Kebert*, 16 F.R.D. 225, 227 (W.D. Pa. 1954) ("[P]arties who seek to intervene . . .

12   must join in the support of the claim made or in defense of the claim asserted in the

13   litigation in the first instance.") "Intervention is not proper to litigate an issue or

14   issues which do not exist or are not available in an action between the original

15   parties." *United States v. Lehigh Valley Co-op Farmers, Inc.*, 294 F. Supp. 140, 144

16   (E.D. Pa 1968).

17         Plaintiff's former counsel, Mr. Okorocha, has not moved to intervene in this

18   action. Even if he had filed such a motion, it could not be granted. Mr. Okorocha's

19   claim of a lien on Ms. Cortez's settlement proceeds does not share a common

20   question of law or fact with Ms. Cortez's claims against Defendant Xerox

21   Corporation in the instant action. It is therefore inappropriate for Mr. Okorocha to

22   intervene in this case as if he were a party to it. The proper forum for Mr. Okorocha

23   to litigate his claims of a lien against Ms. Cortez is in a separate civil action, not in

24   this one. *Carroll v. Interstate Brands Corp.*, 99 Cal. App. 4th 1168, 1173

25   ("Appellate courts have consistently held that the trial court in the underlying action

26   has no jurisdiction to determine the existence or validity of an attorney's lien on the

27   judgment.").

28

1      Nevertheless, Mr. Okorocha and his attorney, Twila White, have been

2  effectively trying to intervene in this case—and Defendant Xerox Corporation has

3  been inappropriately inviting them to intervene.  Defendant's counsel has been

4  including Ms. White in communications dealing with the judge's December 4, 2023,

5  order, as well as engaging in discussions regarding the actual settlement agreement

6  and its terms.  See examples of email exchanges between Xerox counsel, Twila

7  White and me.  **Exhibit A.**

8      The judge's December 4, 2023, order (Dkt. No.142) was to only include Mr.

9  Okorocha (and his attorney) for the limited purpose of answering whether Mr.

10  Okorocha is willing to have Ms. Cortez's settlement funds go into an escrow

11  account.  Yet during the conference call to discuss this narrow question, counsel for

12  Xerox and counsel for Mr. Okorocha both tried to derail the discussion with other

13  topics including threatening Ms. Cortez that Mr. Okorocha has the option to sue Ms.

14  Cortez if she did not agree to giving him the portion of the settlement he was

15  requesting.  Because it was improper for counsel for Xerox and counsel for Mr.

16  Okorocha to engage in such discussions, together, in a call intended only to address

17  the escrow question, Ms. Cortez ended the call once the parties to this action gained

18  agreement from Ms. White to put Ms. Cortez's settlement funds into escrow.

19

20  **II.  Mr. Okorocha's effective abandonment of Ms. Cortez's case in the midst**

21  **of litigation entitles her to relief under Rule 60(b).**

22

23      Ms. Cortez respectfully asks this Court to set aside the settlement agreement

24  currently being negotiated between the parties and to reopen discovery, under

25  Federal Rule of Civil Procedure 60(b)(6). Rule 60(b)(6) permits relief from

26  judgment "for any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6). As

27  counsel for Defendant has consistently argued, the settlement agreement currently

28  before the court is a final judgment.

3

**PLAINTIFF'S MOTION TO ENJOIN AND TO REOPEN DISCOVERY**

1    "[A] party merits relief under Rule 60(b)(6) if he demonstrates 'extraordinary

2    circumstances which prevented or rendered him unable to prosecute [her case].'"

3    *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002), *as amended on*

4    *denial of reh'g and reh'g en banc* (Apr. 24, 2002) (citations omitted).

5        An attorney's gross negligence in prosecuting his client's case constitutes

6    such "extraordinary circumstances." *Id.* at 1169, 1170, 1172 (holding trial court's

7    denial of Rule 60(b)(6) relief was abuse of discretion where movant's trial counsel

8    had been grossly negligent); *see also In re Virginia Info. Sys. Corp.*, 932 F.2d 338,

9    342 (4th Cir. 1991) ("[A]ttorney malfeasance which actively misleads a client or is

10   comparably culpable might successfully ground a Rule 60(b) motion."), *overruled*

11   *on other grounds by Barnhill v. Johnson*, 503 U.S. 393 (1992); *Greenspun v. Bogan*,

12   492 F.2d 375, 382 (1st Cir. 1974) (applying Rule 60(b)(6) to "failure of attorneys . .

13   . to act on behalf of their clients"); *L.P. Steuart, Inc. v. Matthews*, 329 F.2d 234, 235

14   (D.C. Cir. 1964) (stating Rule 60(b)(6) "is broad enough to permit relief when . . .

15   counsel . . . grossly . . . neglect[s] a diligent client's case and mislead[s] the client");

16   *Primbs v. United States*, 4 Cl. Ct. 366, 370 (1984) (holding normal attorney-client

17   relationship does not bar Rule 60(b)(6) relief when "the evidence is clear that the

18   attorney and his client were not acting as one"). "When an attorney is grossly

19   negligent, . . . the judicial system loses credibility as well as the appearance of

20   fairness, if the result is that an innocent party is forced to suffer drastic

21   consequences." *Tani*, 282 F.3d at 1170.

22       As the Court in *Tani* explained, Rule 60(b)(6) relief for clients with grossly

23   negligent counsel in civil cases is akin to the relief from judgment that clients in

24   criminal cases are entitled to upon a showing of ineffective assistance of counsel.

25   *Tani*, 282 F.3d at 1169, 1170. A separate action for attorney malpractice is "an

26   insufficient remedy to foreclose the possibility of relief under Rule 60(b)(6)." *Id.* at

27   1171. "Relief from a malpractice action often comes after substantial delay, if at all,

28   and it increases the amount of litigation in our courts." *Id.*

4

**PLAINTIFF'S MOTION TO ENJOIN AND TO REOPEN DISCOVERY**

1    In *Tani*, the Ninth Circuit found an attorney's gross negligence constituted

2  "extraordinary circumstances" under Rule 60(b)(6) where the attorney "virtually

3  abandoned his client by failing to proceed with his client's defense despite court

4  orders to do so"; "abandoned his duties as an attorney" in pre-trial preparation,

5  including failing to contact opposing counsel for preliminary settlement discussions

6  and failing to attend hearings; and misled his client into believing the case was

7  going smoothly, "deliberately deceiving" his client "about the services he was

8  supposed to be performing." *Tani*, 282 F.3d at 1171. "[C]onduct on the part of a

9  client's alleged representative that results in the client's receiving practically no

10  representation at all clearly constitutes gross negligence." *Tani*, 282 F.3d at 1171.

11    In *Lal v. California*, 610 F.3d 518, 525, 527 (9th Cir. 2010), the Ninth Circuit

12  again found it an abuse of discretion not to grant relief under Rule 60(b)(6) where

13  the movant's attorney "virtually abandoned his client by failing to proceed with his

14  client's case," failed to attend various hearings, and "deliberately misled his client

15  and deprived her of the opportunity to take action to preserve her rights," including

16  telling her he had scheduled depositions he hadn't scheduled and filed motions he

17  hadn't filed.

18    Ms. Cortez's trial attorney in this matter, Mr. Okorocha, was every bit as

19  negligent and deceptive in his handling of her case as were the trial counsel in *Tani*

20  and *Lal*.

21    Mr. Okorocha engaged in no discovery from the time he was engaged by Ms.

22  Cortez on September 3, 2022, until she terminated the relationship in April 2023,

23  with the formal withdrawal being submitted on June 15, 2023. (Dkt. No. 106). This

24  lack of discovery is inexcusable given the timing of Mr. Okorocha's representation

25  of Ms. Cortez: after Mr. Okorocha took over Ms. Cortez's case, the parties

26  stipulated to a deadline of February 20, 2023, to do Ms. Cortez's deposition; a

27  deadline of March 15, 2023, for fact discovery; and a deadline of April 27, 2023, for

28  expert discovery. (Dkt. No. 75-1). Mr. Okoracha let all these deadlines elapse

without even doing any propounding—or even preparing to propound—any
discovery requests at all.

Mr. Okorocha did not request any documents or follow the directions of the
court as ordered in the Court's Docket. (Dkt. 77)  He allowed Xerox counsel to quite
inappropriately terminate Sean Hickey's deposition early as soon as Mr. Hickey was
asked about his inappropriate relationship with Courtney Vitez.

When Mr. Hickey was asked about Ms. Vitez, whom Mr. Hickey promoted
instead of Plaintiff, Defendant's counsel inappropriately called a break in the
deposition while the question was still pending, because it appeared that she didn't
know how to handle the question.   Mr. Hickey also fumbled when asked about
following the "Wilson Rule." **Exhibit B.**  After the "break," Mr. Okorocha was not
prepared to continue the deposition, nor did he pursue rescheduling it despite Ms.
Cortez's insistence that he do so.

The Wilson Rule— Xerox's formal protocol for hiring and promoting senior
level managers—was developed by the Xerox Diversity Office and is an HR policy
that requires hiring managers for senior level positions to have at a minimum, one
female and one minority in the final candidate pool before making a hiring decision.
This rule was benchmarked after the NFL's "Rooney Rule." **Exhibit C.**  (There is
currently a lawsuit against the NFL by the former head coach of the Miami
Dolphins, Brian Flores for violating the "Rooney Rule.")

A central point of Ms. Cortez's lawsuit against Xerox is that Mr. Hickey did
not follow this rule, in retaliation for Ms. Cortez's internal complaints at the
company.  All the candidates Mr. Hickey hired were Caucasian males except for one
female, Courtney Vitez.  Ms. Cortez's performance was superior to each of the four
candidates who were promoted over her. **Exhibit D.**

1    Ms. Cortez was not looking for a handout. She didn't need one. Her track

2    record speaks for itself. Numbers don't lie.

3    When Xerox inappropriately terminated the depositions of its own witnesses

4    (by counsel other than Mr. Okorocha), Mr. Okorocha did nothing to insist the

5    depositions proceed as required by law.

6    Mr. Okorocha did not properly defend depositions conducted by counsel for

7    Xerox. Specifically, Mr. Okorocha raised no objections at all during these

8    depositions.

9    Mr. Okorocha did not file anything in court in Ms. Cortez's case, except for

10   (1) his notice of a lien on May 30, 2023, on any settlement proceeds Ms. Cortez

11   might receive and (2) a motion to withdraw from her case on June 15, 2023, upon

12   her insistence that he do so after multiple attempts she made to have him disengage

13   since April (Dkt. No. 106). A review of Ms. Cortez's case file from Mr. Okorocha

14   reveals that he did not write a single memo or produce any other work product in

15   Ms. Cortez's matter.

16   On January 26, 2023, the Court ordered Mr. Okorocha to schedule a

17   mediation with opposing counsel by April 14, 2023. (Dkt. No. 77). Mr. Okorocha

18   did not comply.

19   Mr. Okorocha also failed to comply with the Court's May 23, 2023, order that

20   he "file a position regarding the status of his representation of Plaintiff and

21   responding to the assertions contained in the 'Opposition' by May 25, 2023" and the

22   Court's May 23, 2023, order that he (and all counsel) appear at the June 8, 2023,

23   hearing in this matter. (Dkt. 95). In response to the Court's order to show cause why

24   he should not be held in contempt for his defiance of these orders, Mr. Okorocha

25   wrote, "[I]t was just a stupid mistake and I know better." (Dkt. No. 97 at ¶ 2). Mr.

26   Okorocha also did not comply with the Court order from December 4, 2023, to

27   appear in Court on December 7, 2023. (Dkt No. 142) "ANY AND ALL PARTIES,

28   PERSONS, OR ENTITIES (excluding counsel for Defendant who, as set forth

below, may appear by telephone if requested) HAVING OR CLAIMING ANY
INTEREST IN THE SETTLEMENT AGREEMENT OR ANY FUNDS TO BY
PAID THEREUNDER ARE ORDERED TO BE PERSONALLY PRESENT IN
COURTROOM 6A ON DECEMBER 7, 2023, AT 10:00 A.M. AND ARE
ADVISED THAT A FAILURE TO PERSONALLY APPEAR AT THAT DATE,
TIME, AND LOCATION, MAY BE DEEMED A WAIVER OR
ABANDONMENT OF ANY CLAIMED INTEREST IN THE SETTLEMENT
AGREEMENT OR FUNDS TO BE PAID THEREUNDER." (Dkt No. 142).

Opposing counsel filed a Motion for Summary Judgment (MSJ) on April 5,
2023, and the response was due on April 15, 2023.  (Dkt. No. 75-1).  On April 12,
2023, with Xerox's as-yet-unresponded to motion for summary judgment then
pending, counsel for Xerox scheduled the mediation for April 14, 2023—one day
before Ms. Cortez's opposition to Xerox's motion for summary judgment was due—
with Mr. Okorocha's approval.  As laid out above, Mr. Okorocha had done no
material work to oppose Xerox's motion for summary judgment, to protect his client
in the event settlement could not be reached.  He also failed to let Ms. Cortez know
that it was due on April 15, 2023.

Mr. Okorocha did not give Ms. Cortez any opportunity to prepare either. On
April 13, 2023, Mr. Okorocha informed his client Ms. Cortez for the first time that
opposing counsel scheduled a mediation for the following day, and that it was only
going to be a half day rather than a full day. No preparation was made despite Ms.
Cortez's insistence to develop and review a documented brief.  Mr. Okorocha did
not respond to any of Ms. Cortez's requests for updates on his preparations.  At the
mediation, Mr. Okorocha did not present to the mediator or the other party the
financial justification Ms. Cortez had prepared for Mr. Okorocha to support her
demand for $3M **Exhibit E**.  Mr. Okorocha did not communicate with Ms. Cortez
until the start time of the Mediation on April 14, 2023. Mr. Okorocha hardly spoke
throughout the entire discussion.  During the mediation, it appeared he was working

1   on something else as he was not looking into the camera.  He prepared no brief or

2   made any other preparation for the mediation.

3          The mediator quickly started the mediation with a $40k settlement offer

4   because opposing counsel stated that Ms. Cortez's first attorney tried to negotiate

5   that amount.  This was shocking to Ms. Cortez and she had never heard that before.

6          After the mediation, Mr. Okorocha agreed to a $50,500 settlement, including

7   mediation fees on Ms. Cortez's behalf, even though Ms. Cortez specifically and

8   repeatedly directed him in writing to decline the mediator's proposal.  He

9   mispresented to opposing counsel that Ms. Cortez had agreed to the settlement offer

10  when quite explicitly she had not. (Dkt No. 83-2, ¶¶ 9, 11).

11         No settlement was formally signed by the parties at the mediation on April

12  14.  On April 16, Ms. Cortez rejected the mediator's proposal and instructed Mr.

13  Okorocha to so notify all parties.  On April 16, 17, 18, and 19, Ms. Cortez told Mr.

14  Okorocha she declined the settlement proposal.  On April 19, Ms. Cortez received a

15  copy of the proposed settlement; she immediately wrote on it that she declined the

16  proposal and sent it to Mr. Okorocha.  Without Ms. Cortez's authority or

17  knowledge, Mr. Okorocha then notified the mediator, opposing counsel, and the

18  Court that a settlement had been reached.  Counsel for Defendant went on to seek

19  monetary sanctions against Ms. Cortez "for bad faith conduct in attempting to back

20  out of the settlement" that she had never agreed to in the first place. (Dkt. No. 83).

21         Mr. Okorocha's unethical behavior continued by working with opposing

22  counsel to file the "Joint Settlement Agreement" without Ms. Cortez's knowledge

23  and consent.  All along Mr. Okorocha was in alignment with Xerox's opposing

24  counsel and acting directly against the explicit instructions of his own client Ms.

25  Cortez.  According to the sworn declaration of Xerox's own counsel in this case,

26  Mr. Okorocha repeatedly told counsel for Xerox that *he did not support his own*

27  *client's rejection of the settlement*. (Dkt No. 83-2, ¶¶ 9, 11). Please reference

28  **Exhibit F** for the Mediation and Settlement Agreement Timeline.

Since Mr. Okorocha had not prepared the MSJ opposition that was due on April 15, 2023, he decided to take matters into his own hands and settle the case against Ms. Cortez's direction. Mr. Okorocha failed his client by agreeing to a very low settlement that was dictated by opposing counsel to escape responding to the MSJ and left his client abandoned.

**CONCLUSION**

Plaintiff Rita Cortez respectfully requests that this Court:

(a) issue an order Enjoining Defendant Xerox corporation and their attorneys from discussing all elements of case Number 8:20-cv-02057 with her former attorney Okorie Okorocha, his attorney Twila White and anyone else not directly involved on this lawsuit;

(b) grant Ms. Cortez relief under Rule 60(b)(6) so that she may be afforded the opportunity to prosecute her case that her trial lawyer's gross negligence deprived her of.

DATED: February 9, 2024

_____
Rita Cortez, In Pro Per

**PLAINTIFF'S MOTION TO ENJOIN AND TO REOPEN DISCOVERY**

# PROOF OF SERVICE

**Rita Cortez vs. Xerox Corporation. et al.**

## UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

I am over the age of 18 and the self-represented Plaintiff to the within action; my business address 854 Violet Court, CA 92011. I am familiar with the regular mail collection and processing practices of said business, and in the ordinary course of business the mail is deposited with the United States Postal Service that same day.

On **February 9**, I served the foregoing document on all interested parties in this action below.

| | |
|---|---|
| Janice P. Brown (SBN: 114433) jbrown@meyersnave.com Nicole Ries Fox (SBN: 268819) nriesfox@meyersnave.com MEYERS NAVE 600 B Street, Suite 1650 San Diego, CA 92101 Telephone: 619.330.1700 Facsimile: 619.330.1701 | Attorneys for Defendant XEROX CORPORATION |

☒ By placing a true copy thereof **BY ELECTROCNIC SERVICE.** Pursuant to code of Civil Procedure section 1010.6 and California Rules of Court, Rule 2.251, services shall be completed via electronic transmission to the attached person(s) transmission of such is at the email address(es) indicated above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **February 9, 2024**, at Carlsbad, California.

_____
Rita Cortez